**SO ORDERED.**

**SIGNED this 15 day of April, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION**

| | |
|---|---|
| IN RE: | |
| CAREMERICA, INC., | CASE NUMBER: 06-02913-8-JRL |
| | CHAPTER 7 |
| DEBTOR. | |
| | |
| IN RE: | |
| JAMES B. ANGELL, CHAPTER 7 TRUSTEE, | ADVERSARY PROCEEDING NO. 08-00157-8-JRL |
| Plaintiff, | |
| v. | |
| FIRST EASTERN, LLC, | |
| Defendant. | |

### ORDER

This matter came before the court on cross motions for summary judgment. A hearing was held in Raleigh, North Carolina, on February 1, 2011.

### JURISDICTION

This court has jurisdiction over the parties and the subject matter of this proceeding

pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), which this court may hear and determine.

## PROCEDURAL BACKGROUND

On September 15, 2006, Caremerica, Inc., Caremerica Adult Care, Inc., The Meadows of Hermitage, Inc., The Meadows of Fayetteville, Inc., and The Meadows of Wilmington, Inc. filed petitions for relief under chapter 11 of the Bankruptcy Code. The cases were subsequently converted to cases under chapter 7. On February 4, 2008, the court entered an order allowing the substantive consolidation of the cases and appointed James B. Angell as trustee. The consolidated cases are administered under the name Caremerica, Inc., Case No. 06-02913-8-JRL.

On September 14, 2008, the plaintiff filed the instant action. On November 4, 2008, the defendant filed a motion to dismiss the complaint. On December 23, 2008, prior to the filing of a responsive pleading, the plaintiff filed an amended complaint. On January 30, 2009, the defendant again filed a motion to dismiss. After a hearing, the court entered an order dated July 28, 2009, granting the motion to dismiss but allowing the plaintiff leave to replead. The plaintiff filed a second amended complaint on August 26, 2009, and again the defendant filed a motion to dismiss. The court entered an order denying the motion to dismiss the second amended complaint on January 5, 2010. An answer was filed by the defendant to the second amended complaint on February 10, 2010.

## UNDISPUTED FACTS

1. Ron Burrell ("Burrell") and Mike Elliott ("Elliott") are shareholders of numerous corporations and limited liability companies that operate assisted living facilities. The names of

2

the Burrell/Elliott entities often included the words Caremerica or Meadows. Only five of the Burrell/Elliott entities filed chapter 11. One of the five original debtors, Caremerica, Inc.("Caremerica"), was a management company that maintained a centralized operating account from which all of the Burrell/Elliott entities' bills were paid.

      2. Stephen Powell ("Powell") and his sisters are shareholders of three limited liability companies: Powell Properties of Durham County, LLC; Powell/Rhoades, LLC; and Rose Hill Enterprises, LLC (the "Powell Entities"). The Powell Entities own the real properties leased by the debtor and non-debtor Burrell/Elliott entities.

      3. Further complicating the facts of this case is the joint ownership by Burrell, Elliott, and Powell of four of the non-debtor Burrell/Elliott assisted living facilities. Powell holds an interest in: Greenville Assisted Living, LLC; Raleigh Assisted Living, LLC; Rocky Mount Assisted Living, LLC; and Grifton Assisted Living, LLC (the "Assisted Living LLCs"). Each of the Assisted Living LLCs operated an adult care facility on property leased from the Powell Entities, specifically Rose Hill.

      4. Management agreements were executed by Caremerica and the Assisted Living LLCs.

      5. The defendant, First Eastern, LLC ("First Eastern") is owned by Powell and his sisters. In many respects, First Eastern is analogous to Caremerica in that it is a management company created to handle and centralize money. Powell directed First Eastern to accept monies owing to the Powell Entities.

      6. Within the one year period prior to the petition date, the debtors transferred eight payments to First Eastern totaling $320,911.82 by funds transfer or wire transfer.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), made applicable in bankruptcy by Bankruptcy Rule 7056, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.

Ct. 2548, 2552 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962).

## ANALYSIS

In his motion for summary judgment, the trustee raised the argument that the subject transfers were constructively fraudulent pursuant to 11 U.S.C. § 548; however, at the hearing it was largely conceded that the trustee would not pursue a § 548 argument, and that the transfers are to be analyzed as preferences pursuant to 11 U.S.C. § 547. The elements of a preference are: (1) a transfer of an interest of the debtor in property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt owed by the debtor before such transfer was made; (4) made while the debtor was insolvent; (5) made within one year before the date of filing if such creditor at the time of such transfer was an insider; (6) that enables such creditor to receive more than such creditor would receive if the case were under chapter 7. 11 U.S.C. § 547(b). Section 547(b) furthers one of the overall goals of bankruptcy, equal treatment of creditors, by authorizing the trustee to recover preferential transfers and preserve property of the bankruptcy estate. Precision Walls, Inc. v. Crampton, 196 B.R. 299, 302 (E.D.N.C. 1996).

A trustee's avoidance powers under § 547(b) are subject to the exceptions enumerated in § 547(c). The defendant argues that the transfers at issue fit within these exceptions, asserting that the transfers were not preferential in nature, and may not be recovered by the trustee because they were made: (1) in a contemporaneous exchange for new value; (2) in the ordinary course of business; and, (3) that subsequent new value was actually given by the creditor for the benefit of the debtor. 11 U.S.C. § 547(c)(1)-(2), (4). After review of the record, the court finds that the

4

plaintiff has substantially carried his burden under § 547(b).  All elements of a preference action are satisfied with the exception of showing that the defendant was an insider of the debtor.  Each element is addressed in turn.

First, the parties do not dispute that First Eastern received transfers from the debtor.  An interest in property of the debtor is property which would have been part of the estate, as defined by § 541, had the transfer not occurred.  Begier v. IRS, 496 U.S. 53, 110 S.Ct. 2258 (1990); In re Cybermech, Inc., 13 F.3d 818, 820-821 (4th Cir. 1994).  The debtors, and their non-debtor affiliates, pooled money in one bank account, controlled by Caremerica.  Deposition of Stanley E. Brunson at 35-36, Caremerica, Inc. v. First Eastern, No. 08-000157-8-JRL (Bankr. E.D.N.C. October 14, 2010).  Bank accounts are property in which a debtor has a legal or equitable interest.  11 U.S.C. § 541. Had the money transferred remained in the debtors' bank account, it would have been classified as property of the estate upon the filing of the petition.  Thus, First Eastern received an interest in property of the debtor.

Second, the purpose of the transfers was payment of an antecedent debt for the benefit of a creditor.  First Eastern accepted payments which were owing to the Powell Entities.  The defendant argues that because First Eastern and the Powell Entities were not creditors of Caremerica, the necessary debtor/creditor relationship is lacking.  However, the defendant's focus on Caremerica alone is misplaced.  Caremerica kept one operating account of pooled money for all of the debtor and non-debtor Burrell/Elliott facilities; hence, payments made from Caremerica are attributable to *all* Burrell/Elliott entities.  The Powell Entities were creditors of all Burrell/Elliott entities, debtor and non-debtor alike.  Therefore, the transfers that were lease payments made on behalf of the four operating debtors that were substantively consolidated with

5

Caremerica, Inc. were payments to a creditor on account of an antecedent debt.

This line of reasoning does not render First Eastern a mere conduit. Although First Eastern only accepted funds of the debtor at Powell's direction, it is reasonably classified as the first in a line of transferees. A transferee is one that exercises legal dominion and control over funds at issue. Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Properties L.P.), 99 F.3d 151, 156 (4th Cir. 1996). As evidenced by the defendant's banking records, First Eastern maintained one operating account where all payments from the debtor and third parties were deposited. If First Eastern were a conduit, the funds would have flowed through the account to the designated party without discretion in distribution. However, account transactions show payments made on a regular basis from First Eastern to itself, along with disbursements to the members of First Eastern. These additional disbursements establish that First Eastern had control over the money in the account, to whom payment was made, and the amount of such payment; therefore, it is not appropriate to classify the defendant as a conduit.

Third, the transfers at issue were made while the debtor was insolvent. Debtors are presumed insolvent during the 90-day period prior to the date of petition. 11 U.S.C. § 547(f). Beyond the 90 day look-back, insolvency is defined as a sum of debts greater than the value of an entity's assets. This definition excludes property which was transferred, concealed, or removed to defraud creditors, and also excludes any property which may be exempt. 11 U.S.C. § 101(32)(A). The plaintiff questions eight payments made from the debtor's bank account. All of the payments at issue cleared the account between February and August 2006. The debtor's petition was filed September 15, 2006; therefore, the four payments made between July and August are during the period of presumed insolvency. For the June 6, 2006 payment, and other

6

remaining payments dating back to February 10, 2006, insolvency must be proven. Schedules for Caremerica, without considering co-debtors, reveal total assets of $9,842.69 and total liabilities of $4,686,715.94.  Combined assets of the consolidated debtor totals approximately $68,834.20.  Thus far, the claims register shows claims of $15,823,184.00 for Caremerica alone.  These differences falls squarely within the § 101(32) statutory definition of insolvency.  Therefore, all eight payments alleged as preferential by the plaintiff were made while the debtor was insolvent.

Fourth, to deem a transfer a preference, the plaintiff must also show that the transfers allowed the defendant to receive more that it would have under chapter 7.  The defendant contends that were the transfers not made, it would have posted a bond claim and received full payment.  This argument ignores the plain language of the statute. Under § 547(b)(5) the focus is "not on whether a creditor may have recovered all of the monies owed by the debtor from any source whatsoever, but instead upon whether the creditor would have received less than a 100% payout from the bankruptcy estate." United Rentals, Inc. v. Angell, 592 F.3d 525, 531 (4th Cir. 2010)(citing, Smith v. Creative Financial Management, Inc. (In re Virginia-Carolina Financial Corp.), 954, F.2d 193 (4th Cir. 1992)).  There are simply not enough assets in the present case to pay unsecured claims in full. Affidavit of James B. Angell at 2-3, Caremerica, Inc. v. First Eastern, No. 08-00157-8-JRL (Bankr. E.D.N.C. November 18, 2010).  Therefore, those transfers received by First Eastern placed the creditors for which it managed money in a better position that they would be under a liquidation analysis.

The last element under a preference action is the determination of whether the defendant was an insider of the debtor.  An insider is defined by § 101(31), though the list is not exhaustive. 11 U.S.C. § 102(3).  Insiders may also be "nonstatutory." In re Winstar

7

Communications, Inc., 554 F.3d 382 (3rd Cir. 2009). Actual control of the debtor is not necessary for status as an insider on a nonstatutory basis. Winstar, 554, F.3d 382, 396 (3rd Cir. 2009). Instead, the determination of insider status on these terms focuses on two factors: (1) the closeness of the relationship between parties; and, (2) whether the transaction in question was arm's length. Winstar, 554 F.3d at 396-397 (3rd Cir. 2009).

The trustee's argument for why the defendant is an insider of the debtor appears to be a nonstatutory one revolving around Powell's joint ownership of the Assisted Living LLCs, and the closeness of the relationship between Powell, Burrell, and Elliott which placed Powell, an insider of First Eastern, in a position to influence the debtor. However, Powell's testimony contradicts the notion that he had any control over payments from the debtor to First Eastern. At the outset of the hearing, the court was skeptical of the idea that the defendant was an insider, there being no common ownership between these two seemingly independent entities; but, after closer review, the court finds that there is a viable argument that First Eastern is an insider; not in the respect argued by the trustee, but under the statutory language.

Section 101(31)(E) states that the term insider includes an "affiliate, or insider of an affiliate as if such affiliate were the debtor." An affiliate is defined under § 101(2) as a:

> corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote 20 percent or more of the outstanding voting securities of the debtor. . . .

11 U.S.C. § 101(2)(B). The definition of an entity includes a person. 11 U.S.C. § 101(15). The Assisted Living LLCs are affiliates of the debtor because Burrell and Elliott hold at least 20 percent voting rights in both the debtor and the Assisted Living LLCs. Therefore, the Assisted

Living LLCs are insiders of the debtor.  This alone does not make First Eastern an insider.  However, an insider of an affiliate may also be an insider of the debtor.

There are not enough facts of record to determine if Powell is an insider of the Assisted Living LLCs; however, assuming arguendo that Powell is an insider of the Assisted Living LLCs, then he is an insider of an affiliate.  Under the language of § 101(31)(E), an insider of an affiliate is an insider of the debtor as if the affiliate were the debtor.  Along this line of reasoning, the Assisted Living LLCs are viewed as if they were the debtor. First Eastern then becomes an affiliate of the Assisted Living LLCs because Powell has at least 20 percent voting rights in both First Eastern and arguably the Assisted Living LLCs, which under this analysis is considered the debtor.  Therefore, First Eastern is likely an insider of the debtor.  The linchpin of this analysis is the percentage of Powell's ownership in the Assisted Living LLCs.  On the record it is clear that Powell was a joint owner, but what is not discernable is whether the percentage of ownership amounts to 20 percent as required to be an insider under the § 101(31) affiliate rules.

Based on the foregoing, the plaintiff's motion for summary judgment is **ALLOWED** as to all elements of a preference except the insider issue.  The motion for summary judgment is **DENIED** with regard to the determination of the defendant as an insider of the debtor.  The defendant's motion for summary judgment is **GRANTED** to the extent the trustee relies on § 548. The defendant's motion  raised several affirmative defenses.  However, the court finds there are genuine issues of material fact with regard to the defenses raised.  Therefore, the defendant's motion for summary judgment is **DENIED** on those grounds.

**END OF DOCUMENT**